# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF KANSAS

PATRICK W. HENNESSY            )
                              )
            Plaintiff,         )
                              )
      v.                       )      Case No. 13-2278-RDR
                              )
                              )
CAROLYN W. COLVIN,             )
Acting Commissioner of         )
Social Security,               )
                              )
            Defendant.         )

## MEMORANDUM AND ORDER

On September 28, 2009, plaintiff filed an application for supplemental security income benefits, alleging disability beginning on September 1, 2009. He had recently turned 18 years-old. On September 6, 2011, a hearing was conducted upon plaintiff's application. The administrative law judge (ALJ) considered the evidence and decided on September 15, 2011 that plaintiff was not qualified to receive benefits. This decision has been adopted by defendant. This case is now before the court upon plaintiff's motion to reverse and remand the decision to deny plaintiff's application for benefits.

I. STANDARD OF REVIEW

To qualify for supplemental security income benefits, a claimant must demonstrate that he is "disabled" under the Social Security Act, 42 U.S.C. §§ 1381a, 1382. To be "disabled" means

that the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3). For supplemental security income claims, a claimant becomes eligible in the first month where he or she is both disabled and has an application on file. 20 C.F.R. §§ 416.202-03, 416.330, 416.335.

The court must affirm the ALJ's decision if it is supported by substantial evidence and if the ALJ applied the proper legal standards. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007). "Substantial evidence" is "more than a mere scintilla;" it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. The court must examine the record as a whole, including whatever in the record fairly detracts from the weight of the defendant's decision, and on that basis decide if substantial evidence supports the defendant's decision. Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994) (quoting Casias v. Secretary of Health & Human Services, 933 F.2d 799, 800-01 (10th Cir. 1991)). The court may not reverse the defendant's choice between two reasonable but conflicting views, even if the court would have made a different choice if the matter were referred to the court de novo. Lax,

489 F.3d at 1084 (quoting Zoltanski v. F.A.A., 372 F.3d 1195, 1200 (10th Cir. 2004)).

II.  THE ALJ'S DECISION (Tr. 13-21).

There is a five-step evaluation process followed in these cases which is described in the ALJ's decision.  (Tr. 13-15). First, it is determined whether the claimant is engaging in substantial gainful activity.  Second, the ALJ decides whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments which are "severe."  At step three, the ALJ decides whether the claimant's impairments or combination of impairments meet or medically equal the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1.  Next, the ALJ determines the claimant's residual functional capacity and then decides whether the claimant has the residual functional capacity to perform the requirements of his or her past relevant work.  Finally, at the last step of the sequential evaluation process, the ALJ determines whether the claimant is able to do any other work considering his or her residual functional capacity, age, education and work experience.

In this case, plaintiff has no prior history of relevant work and the ALJ decided plaintiff's application should be denied on the basis of the fifth and last step of the evaluation process.  The ALJ decided that plaintiff had the residual

functional capacity to perform jobs that existed in significant numbers in the national economy.

The ALJ made the following specific findings in her decision. First, plaintiff did not engage in substantial gainful activity after September 28, 2009, the application date for benefits. Second, plaintiff has Asperger's syndrome which is a severe impairment. Third, plaintiff does not have an impairment or combination of impairments that meet or medically equal the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ specifically considered the listings at 12.06 and 12.10 and discussed whether the "paragraph B" criteria were satisfied. The ALJ determined that plaintiff has mild restrictions in the activities of daily living, moderate difficulties in social functioning, and mild difficulties with regard to concentration, persistence or pace. She further determined that plaintiff has experienced no episodes of decompensation of extended duration. Because the ALJ concluded that plaintiff did not have "marked restrictions" in at least two of the "paragraph B" criteria or repeated episodes of decompensation, she decided that the "paragraph B" criteria were not satisfied.

Fourth, the ALJ concluded that plaintiff:

has the residual functional capacity to perform a full range of work at all exertional levels, but with the following nonexertional limitations: He should avoid

concentrated exposure to fumes, gases, and chemicals. He is limited to simple, routine, and repetitive tasks; with brief and superficial contact with co-workers and the general public. The work should have few changes in the routine work setting.

(Tr. 17). Finally, considering this residual functional capacity as well as plaintiff's age, education and work experience, the ALJ consulted with a vocational expert and determined that plaintiff is capable of performing jobs that existed in significant numbers in the national economy, such as: stubber; stacker; linen-supply load-builder; and shipping-and-receiving weigher.

III. THE DECISION TO DENY BENEFITS SHALL BE AFFIRMED BECAUSE THE ALJ'S DECISION IS SUPPORTED BY SUBSTANTIAL EVIDENCE AND NO LEGAL ERROR HAS BEEN DEMONSTRATED.

Plaintiff contends that the decision to deny benefits should be reversed because the ALJ committed an error in her analysis of whether plaintiff met the requirements of a listed impairment, specifically Listing 12.10. To satisfy those requirements, the criteria of paragraphs A and B of Listing 12.10 must be met. In this case, the ALJ focused upon the criteria of paragraph B which provides that there must be medically documented findings of at least two of the following: "1. Marked restriction of activities of daily living; or 2. Marked difficulties in maintaining social functioning; or 3. Marked difficulties in maintaining concentration, persistence,

or pace; or 4. Repeated episodes of decompensation each of extended duration." 20 C.F.R. Pt. 404, Subpt. P, App.1 § 12.10.

Plaintiff does not claim that he has had repeated episodes of decompensation each of extended duration. So, the issues in this case appear to be whether the ALJ's conclusions regarding the other three categories are supported by substantial evidence and whether the ALJ misapplied the law.

The ALJ's reasons for finding that plaintiff had no marked restrictions or difficulties are explained in part as follows:

> In activities of daily living, the claimant has mild restrictions. In November 2009, he drove to school with his father; was involved in the school play, vocal lessons, and trombone lessons; was the school mascot and attended sports events; did homework, read, and watched television; he denied problems with personal care; and prepared simple meals, mowed the law, helped with laundry and shopped for clothes. He testified that he drives daily and is a full time sophomore in college. Dr. Grant Edwards noted that the claimant was able to do much that other people his age did and had no problems with daily tasks like hygiene, preparing a meal, or buying things at a store. The undersigned find mild difficulties with respect to activities of daily living.
>
> In social functioning, the claimant has moderate difficulties. He texted, instant messaged on Facebook, and was involved with school and church. He sang the national anthem by himself, in front of the entire gym. He got along very well with authority figures, but had problems making friends and difficulty interacting with peers on anything but a superficial level. He was friendly and outgoing, but could not read non-verbal clues, spoke his mind without restraint, and could become obsessed with girls in his class. He testified that he is emotionally stable, does not have difficulties eating out several times a week, and was able to transition

smoothly from high school to community college. The undersigned finds moderate difficulties with respect to social functioning.

With regard to concentration, persistence, or pace, the claimant has mild difficulties. He graduated from high school in May 2010 with a 3.31 GPA. He completed his freshman year at a local community college and had a 2.97 GPA in August 2011. He was capable of great concentration and memory at times, but had problems with multipart verbal instructions. He had an enormous knowledge of baseball statistics and liked to watch documentaries about American history. He testified that he was very focused when driving a car. The undersigned finds mild difficulties with respect to concentration, persistence, or pace.

(Tr. 16)(citation to exhibits and testimony omitted).

Dr. Scott Koeneman, a licensed psychologist, performed a mental status examination of plaintiff. Dr. Koeneman summarized his findings as follows:

The claimant did not present impairments related to understanding and memory, sustained concentration and persistence that would prevent gainful employment. The claimant's intellectual abilities likely fall in the Average range. His concentration and short-term and long-term memory appear intact. He displayed good processing speed on specific tasks. However, his ability to work with others without distractions or interference from psychological symptoms is likely compromised due to his difficulty forming developmentally appropriate peer relationships, marked impairment in his ability to read non-verbal cues from others, and preoccupation with restricted patterns of interest. With appropriate vocational support and guidance concerning his social impairments, the claimant is likely able to apply his potential to other performance settings with moderate difficulty in maintaining appropriate social skills for the work environment. . . . . Claimant currently does not demonstrate the mental and emotional capabilities to understand and manage his own money. With appropriate

guidance and support he should be able to understand
and manage his own money.

(Tr. 378). A psychiatric consultant reviewed the records in
this matter and concluded that plaintiff had moderate
limitations in social functioning and concentration, persistence
and pace. She believed that plaintiff, while impaired, was not
so severely impaired to meet or equal the criteria for a listed
impairment. (Tr. 394).

Plaintiff argues that the ALJ's conclusions are contrary to
the opinion of plaintiff's treating psychologist, Dr. Grant
Edwards; that Dr. Edwards' opinions should be given more weight;
that the ALJ should be required to contact Dr. Edwards and ask
him to address the paragraph B criteria; and that the ALJ erred
by failing to discuss the criteria in paragraph A of Listing
12.10.

Dr. Edwards had provided therapy for plaintiff for
approximately seven years when he wrote his treatment summary
for this matter. This summary included the following
observations:

> Patrick tends to believe that he understands a
> situation - - whether it is the expectations of a
> teacher for the semester or the expectations of, say a
> group of classmates at the lunch table. He has a
> great deal of difficulty noticing in the moment, and
> often even afterwards, that his understanding is wrong
> or incomplete. With schoolwork, problems tend to lead
> to frustration, avoidance, denial, and
> procrastination. There is little ability to engage in
> practical problem solving. His success in school has

been due in large part to his parents intervening with the school when problems arise, or his parents walking Patrick through the steps of solving the problem himself.

In social situations, Patrick tends to come off as naïve, and overly enthusiastic. He tends to give long monologues and to miss signs that others are bored, impatient, or uncomfortable. Patrick is friendly and outgoing, and usually likable. However, he is also quite likely to say something that is unknowingly offensive. . . .

Patrick is able to do much of what other people his age do. He is attending community college. He can drive. He has no real problems with daily tasks like hygiene, preparing a meal, buying things at a store. He is bright, and has an encyclopedic knowledge of sports. He is a talented singer. In brief interactions there are few signs that Patrick has a Pervasive Developmental Disorder. However, his success has occurred within the context of a high level of structure created by his parents and schools. In interactions with a wide variety of people – – friends, classmates, teachers – – he often grossly misunderstands important messages. Essentially, any message that is inconsistent with his assumptions, and is not completely direct, concrete, and unambiguous, is likely to be missed or misunderstood. . . .

In short, much of what is communicated between people is outside of Patrick's awareness. He still struggles not just with "not getting it," but with "getting that he doesn't get it." This leads to frequent, often escalating misunderstandings. When there are understanding people around who have the authority to intervene (parents, teachers, counselors), these problems can be managed. However, ongoing problems would be likely if Patrick were to be in any ordinary work environment, for example.

A related source of difficulty for Patrick is naivete that is in seeming contrast with his intelligence and life experience. He tends to believe, for example, that anyone who is friendly to him is his friend. Those who are routinely friendly are seen as close friends. Criticism is misunderstood as friendly

debate. He has lofty goals, such as a career in Hollywood, but only the most elementary understanding of the importance of doing all his school work or of how to manage money.

Finally, Patrick tends to be rigid in situations in which flexibility is needed. Enrolling in school, without the help of his parents, for example, would probably present too many complications for Patrick to manage. Situations with unexpected complications lead to Patrick shutting down, denying or avoiding the situation. Feedback that should be taken seriously must be given emphatically and repeatedly before it begins to change Patrick's thinking. Again, the consequences of this rigidity have been minimized by the ongoing monitoring and intervention of Patrick's parents and others. . . . He is in no way, however, ready to do without this level of help, and would likely have much more serious problems if expected to function in situations in which such help was not present.

(Tr. 497-98).

The ALJ gave Dr. Edwards' opinion "moderate weight" (not controlling weight) for the reason that his opinion was not supported by his treatment notes and was not entirely consistent with the medical record and testimony. (Tr. 19). She commented that plaintiff's activities of daily living and success in high school and community college illustrate that plaintiff functions at a high level and successfully manages a wide variety of responsibilities and relationships, and suggest that he would be able to work full time. (Tr. 19-20).

A. <u>Substantial evidence supports the ALJ's findings</u>.

The court concludes that the ALJ's findings are supported by substantial evidence. The reports of Dr. Koeneman and Dr.

Adams and plaintiff's activities of daily living provide a reasonable basis for the ALJ to conclude that plaintiff is not markedly limited or restricted in his activities of daily living, social functioning, and concentration, persistence or pace. The court acknowledges that there is conflicting evidence, but it is not our job on review to reweigh the evidence or substitute our judgment for that of the Commissioner. White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2002). Much of the conflicting evidence emphasized by plaintiff is found in the report of Dr. Edwards, plaintiff's treating psychologist. The ALJ, however, gave Dr. Edwards' opinion consideration and determined that it did not deserve controlling weight because it was not entirely consistent with the medical record and testimony, and not supported by Dr. Edwards' treatment notes. Again, the record is sufficient to conclude that substantial evidence supports the ALJ's findings and that the ALJ followed the law in rendering her decision.

B. The ALJ was not required by law to recontact Dr. Edwards.

Plaintiff contends that the ALJ did not follow the law because she did not contact Dr. Edwards "to find out if [plaintiff] had any marked difficulties in the 12.10(B) criteria." Doc. No. 4, p. 22. Dr. Adams completed a form which the ALJ considered, among other material, in reaching her

conclusions regarding the paragraph B criteria. (Tr. 392).
Plaintiff appears to contend that ALJ should have contacted Dr.
Edwards to do the same. Plaintiff cites 20 C.F.R. §
404.1512(e)(1), Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th
Cir. 2003) and McGoffin v. Barnhart, 288 F.3d 1248, 1252 (10th
Cir. 2002).

We reject plaintiff's argument. The Robinson and McGoffin
cases involve situations in which a treating source's opinion
contained a conflict or ambiguity which needed clarification.
In Robinson, the treating doctor supposedly did not give a
reason for his opinion that the claimant was unable to work. In
McGoffin, the ALJ was doubtful that the treating physician
actually endorsed the assessment made under his name. Here,
neither plaintiff nor the ALJ has described any such conflict or
ambiguity with regard to Dr. Edwards' opinion. The ALJ simply
found that Dr. Edwards' report was not sufficient evidence to
support plaintiff's claim of disability. In these situations,
the ALJ is under no obligation to contact the treating doctor.
Borgsmiller v. Astrue, 499 Fed.Appx. 812, 815-16 (10th Cir.
10/17/2012); Palmer v. Barnhart, 2006 WL 1581004 *5-6 (D.Kan.
6/6/2006); see also, Russell v. Astrue, 506 Fed.Appx. 792, 794-
95 (10th Cir. 12/28/2012)(no duty to contact a treating source if
the evidence is not incomplete or in need of clarification, but
simply unsupported and inconsistent with the evidence as a

whole); <u>White</u>, 287 F.3d at 908-09 (rejecting a treating doctor's opinion as insufficiently supported by the record does not trigger duty to recontact the doctor to obtain a more detailed medical examination and disability assessment); <u>Jefferson v. Colvin</u>, 2013 WL 6729849 *3 (D.Kan. 12/19/2013)(no duty to recontact medical sources who completed checklists to seek additional information).

This ruling is consistent with the provisions of 20 C.F.R. § 404.1512(e) as interpreted in the above-cited cases. However, as defendant has mentioned and as the court noted in <u>Russell</u>, the provisions of 20 C.F.R. § 404.1512(e) were amended effective February 2012 (after the ALJ's decision in this case but before the Appeals Council's decision). The amended provisions on contacting treating physicians provide the administrative law judge more flexibility and discretion in deciding whether to contact a treating source. 20 C.F.R. § 404.1520b(c)(1).

Plaintiff has also cited SSR 96-5p in support of his contention that the ALJ should have contacted Dr. Edwards for further information. Our opinion remains the same. SSR 96-5p provides for contacting treating sources for clarification when the ALJ cannot ascertain the basis of the treating source's opinion from the case record.[1] This provision does not support a

---

[1] SSR 96-5p provides in part: "Because treating source evidence (including opinion evidence) is important, if the evidence does not support a treating source's opinion on any issue reserved to the Commissioner and the

duty on the part of the ALJ in this case to recontact Dr.
Edwards because the basis for Dr. Edwards' opinion evidence was
made clear to the ALJ. There was no need for clarification.
The differences between the ALJ's conclusions and Dr. Edwards'
conclusions are a matter of disagreement between the ALJ and the
treating source, not a matter of confusion or ambiguity. So,
SSR 96-5p, as argued by plaintiff, does not apply. See <u>Ferguson</u>
<u>v. Commissioner of Social Security</u>, 628 F.3d 269, 274-75 (6th
Cir. 2010); <u>Shaw v. Astrue</u>, 392 Fed.Appx. 684, 688-89 (11th Cir.
8/12/2010).

    C.   <u>The ALJ did not commit error by failing to directly
address paragraph A of Listing 12.10.</u>

    Finally, plaintiff argues that reversal is required because
the ALJ only analyzed the criteria in paragraph B in reaching
her step three conclusions. Plaintiff implies that the ALJ
skipped a necessary stage of analysis or that the ALJ only gave
a summary conclusion that plaintiff did not meet the criteria of
a listed impairment. We reject plaintiff's argument. A
discussion of paragraph B criteria is sufficient in this
instance because those criteria must be met for plaintiff to
satisfy Listing 12.10 and the ALJ determined that they were not.
See <u>Sommers v. Commissioner of Social Security</u>, 2012 WL 5507285
*14 (N.D.Ohio 11/14/2012)(affirming an opinion devoid of any

adjudicator cannot ascertain the basis of the opinion from the case record,
the adjudicator must make 'every reasonable effort' to recontact the source
for clarification of the reasons for the opinion." 1996 WL 374183 at *6.

14

mention of paragraph A criteria as to Listing 12.04). Furthermore, the ALJ's discussion of the paragraph B criteria was not conclusory. As set forth in this opinion, the ALJ discussed the evidence relating to the criteria in some detail.

IV. CONCLUSION

For the foregoing reasons, defendant's decision to deny plaintiff's application for benefits shall be affirmed.


**IT IS SO ORDERED.**

Dated this 7th day of April, 2014, at Topeka, Kansas.


_s/ Richard D. Rogers
Richard D. Rogers
United States District Judge